IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Anthony Odom, ) | Civil Action No. 2:10-02757-DCN-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____  ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Anthony Odom, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 35 years of age on his alleged disability onset date. (R. at 21, 41.) He alleged he became disabled on July 15, 2003, due to injuries sustained in a car accident and due to hepatitis C. (R. at 21, 194.) He had a high school education and past relevant work experience as a grocery clerk and construction worker. (R. at 34, 195, 220.)

The plaintiff protectively filed an application for DIB and SSI on December 28, 2006. (R. at 21, 147-56, 157-59, 194.) His applications were denied initially and on reconsideration. (R. at 21, 88-95, 108, 114-17.) After a de novo hearing held on September 9, 2009 (R. at 17, 36-86), an Administrative Law Judge (ALJ) issued a decision

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

on June 25, 2008, in which he found the plaintiff was not disabled. (R. at 21-35). The Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
>
> (2) The claimant has not engaged in substantial gainful activity since July 15, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: degenerative changes, thoracic spine, degenerative changes and the placement of intramedullary rod due to remote trauma, left hip; mood disorders, NOS; intermittent explosive disorder, NOX; personality disorder NOS, with antisocial and paranoid features; and polysubstance dependence (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404-1567(a) and 416.967(a). The claimant is limited to lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. The claimant is limited to standing and/or walking (with normal breaks and with avoiding uneven terrain when ambulating) for a total of 6 hours of an 8-hour workday. The claimant is limited to occasionally engaging in push and/or pull actions with the left lower extremity; never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs, balancing stooping, kneeling, crouching, and crawling. The claimant must avoid concentrated exposure to extreme cold. Mentally, the claimant is limited t o understanding, remembering, and carrying out short, simple instructions; interacting appropriately with supervisors, coworkers, and the general public on a brief and superficial basis only; responding appropriately to changes in

a routine work setting; and making judgments on simple work related decisions.

(6) The claimant is unable to perform any past relevant (20 CFR 404.1565 and 416.965).

(7) The claimant was born on October 26, 1967 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2003, through the date of this decision (20 CFR. 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(I). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to properly consider the opinions of various medical sources and (2) relying on inconsistent residual functional capacity assessments as between his written decision and that which was provided to the vocational expert. The Court will address each alleged error in turn.

**I.  Treating Physician**

The plaintiff first contends that the ALJ failed to properly consider the opinions of his treating physicians, Drs. Stefan Montgomery and Timothy Eaton.

It is well understood that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.

5

2001). A "medical opinion," is a "judgment[] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Even if a treating physician's opinion is not entitled to "controlling weight," it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96-2p.

### A.     Dr. Stefan Montgomery

On December 7, 2006, Dr. Montgomery completed a Medical Source Statement. (R. at 375-82.) Dr. Montgomery stated that the plaintiff had not been capable of performing sustained light work on a regular basis. (R. at 375.) Also, the plaintiff would still be limited in his ability to perform light work even if he had the freedom to alternate sitting and standing during the workday. (R. at 376.) Dr. Montgomery felt that the plaintiff would miss 4 or more days of work per month due to his symptoms. *Id*. The plaintiff would be limited in his ability to reach in all directions, twisting the body, lifting and carrying 10 or 20 pounds. *Id*. The plaintiff could only occasionally performing grasping or gripping activities. *Id*. Dr. Montgomery reported that the plaintiff could tolerate sitting for one hour and standing/walking for less than 30 minutes at a time without rest and that the plaintiff could stand/walk for 2 hours total in an 8-hour day. *Id*. at 379. He viewed the plaintiff as being able to sit for 6 hours total in an 8-hour day. *Id*. Dr. Montgomery indicated that the plaintiff's pain and nervousness were severe, and his shortness of breath and fatigue were mild. (R. at 380.) Dr. Montgomery wrote that the plaintiff's constant pain in his leg and hip inhibits him from doing most "jobs that he would qualify for." (R. at 381.) Dr. Montgomery stated that the plaintiff's insomnia and bipolar symptoms impair his daily activities. *I*d. Dr. Montgomery

doubted that the plaintiff's bipolar symptoms would improve and believed that they would likely worsen gradually over time. *Id.*

The ALJ, however, found the opinion of Dr. Montgomery to be "internally inconsistent." (R. at 32.) More specifically, the ALJ stated, "[t]he physician indicated that the claimant would be absent from work 4 days or more per month due to his impairments or treatment, which is inconsistent with the opinion that the claimant is capable of sustained sedentary work activities." *Id*. In his 2006 statement, Dr. Montgomery had concluded that the plaintiff was capable of performing "sustained SEDENTARY work on a regular and continuing basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule." (R. at 375.) However, as stated, in the same opinion, Dr. Montgomery indicated that the plaintiff would absent from work for four or more days a month, a fact apparently viewed by the ALJ as inconsistent with regular and continuing sedentary work. (R. at 378.) This was the only basis for rejecting Dr. Montgomery's opinion cited in the decision. (R. at 32.)

The ALJ did not offer, in the first instance, and the defendant does not offer now ,any legal reason why the conclusions are incompatible as a matter of law. In other words, the defendant has not explained why it is impermissible as a function of regulation or case law that a physician cannot find the ability to perform sedentary work on a continuing basis but also find the need to be absent 4 days in a months time. The defendant just says that it is. (Def. Brief at 10; see R. at 32.) The plaintiff reasonably suggests that Dr. Montgomery was identifying the baseline functional capacity of the plaintiff, which could typically be performed, but then included the limitation of some absenteeism. The plaintiff's interpretation is a good one. But, the Court need not resolve it. It is enough to say that the ALJ does not articulate fully the inconsistency, in the first place, for which any justification or explanation is even necessary, and, in the second, why such alleged incompatibility matters such that the whole opinion could be rejected. (See R. at 32.) At worst, the opinion may require some clarification.

7

But, in that regard, if the ALJ found the opinion confusing in this slight respect, he had, it seems, some duty to investigate. As the plaintiff reminds, the United States Supreme Court of the United States stated in *Sims v. Apfel*, 530 U.S. 103, 111 (2000) that "Social Security proceedings are inquisitorial rather than adversarial" and that the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The ALJ has a "'duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record.'" *Miller v. Callahan*, 964 F. Supp. 939, 954 (D. Md. 1997), quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986 ). The Court has never imposed this duty with much rigor; ALJs would bring the administrative process to a halt, screaming, if they were to look behind all the evidence. Here, however, where the "inconsistency" was both dubious and, apparently, dispositive, it seems more was required.

The defendant would argue that Dr. Montgomery's opinion was also inconsistent with other evidence of record. But, this is a post-hoc rationalization that will not be considered by the Court. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

For these reasons, remand and additional consideration of Dr. Montgomery's opinion is necessary.

**B.     Dr. Timothy Eaton**

The plaintiff also contends that Dr. Eaton's opinion was wrongly considered. Dr. Eaton, a psychological consultative examiner, saw the plaintiff, on April 25, 2008. (R. at 486-488.) Dr. Eaton's report included a Mental Status Examination. *Id*. Diagnostic Impressions included Bipolar II Disorder, Alcohol Abuse with Past Dependence and Pain Disorder associated with both psychological factors and medical conditions. (R. at 488.) The plaintiff was also reported to have a Personality Disorder NOS with Antisocial and Paranoid Features, Hepatitis C and Chronic Pain. *Id*. Dr. Eaton stated that the plaintiff's personality disorder had certainly affected interpersonal functioning. *Id*. Dr. Eaton stated that the plaintiff's condition "remains quite chronic and fragile" with the plaintiff "avoiding most social contact given his concerns he will become irritable and aggressive with others. Given his history of relatively poor social and relationship adjustment, as well as marginal vocational adjustment, the plaintiff's concerns are probably valid." *Id*. Dr. Eaton recommended that the plaintiff continue to be involved in mental health care to include counseling services. *Id*. Dr. Eaton said, "Given the chronicity of Odom's problems, it is highly unlikely his status will change significantly in the near future." *Id*.

The ALJ accepted Dr. Eaton's opinion and gave the assessment great weight. (R. at 33 (citing Ex. 18F).) The plaintiff submits that the ALJ's acceptance of this opinion actually supports Dr. Montgomery's finding that the plaintiff would miss several days of work a month. The plaintiff argues that Dr. Eaton's assessment is not compatible with any full time, competitive gainful employment.

To this end, the plaintiff argues that Dr. Eaton's assessment described someone who, even while not attempting to perform any work, was "quite chronic and fragile." (R. at 488.) Further, the plaintiff would emphasize that Dr. Eaton noted, as valid, the plaintiff's tendency to avoid inappropriate and aggressive behavior in his social interaction. *Id*.

The defendant rejoins that contrary to the plaintiff's representation, Dr. Eaton stated only that the plaintiff's "chronic pain will likely limit him *from the types of jobs he has had in the past*." (R. at 488 (emphasis added).) Dr. Eaton did not conclude that the plaintiff was unemployable. Moreover, the defendant argues that the ALJ took into consideration Dr. Eaton's statement that the plaintiff currently "avoid[ed] most social contact" when he limited the plaintiff to interacting with supervisors, coworkers, and the general public on a brief and superficial basis only. (R. at 28-29, 31.)

In contrast to the opinion of treating physicians, the opinions of examining, non-treating physicians need only be evaluated, *see* 20 C.F.R. § 404.1527, although they may permissibly constitute substantial evidence in support of a finding of non-disability, *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (finding assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability). The plaintiff has simply not explained the error. The ALJ's consideration was thorough. (R. at 33.) Moreover, the defendant is right that the opinion does not go quite as far as the plaintiff would recommend. The plaintiff has not identified the legal or factual misstep that demands the ALJ should have derived more limitation from what the plaintiff describes as a "fairly dire" assessment (Pl. Brief at 40).

Illustratively, the plaintiff recommends that given the ALJ's acceptance of Dr. Eatson's opinion that the plaintiff suffers a "very unstable mental health condition" (R. at 33), "consideration of (for instance) a very low stress and non-production type work environment, as well as the need for above average time out of work in the form of breaks and days missed from work, is appropriate in the discussion of Odom's mental RFC," (Pl. Brief at 40.) But, this is not error; it is a suggestion. The plaintiff has not drawn the rather straight line required between Dr. Eaton's opinion and the conclusion that the plaintiff would miss the number of days also recommended by Dr. Montgomery. In light of the Court's ruling concerning Dr. Montgomery, however, it seems possible that the ALJ may, himself,

feel it necessary to revisit the opinion of Dr. Eaton and its implications. The Court would not require it.

## II.     Residual Functional Capacity

The plaintiff also contends that the ALJ posed to the vocational expert a hypothetical question that did not match the functional capacity findings the ALJ made in the hearing decision. In his decision, the ALJ found that due to the plaintiff's severe mental impairments, he had experienced one to two repeated episodes of decompensation for extended duration during the period of time in question. (R. at 28.) Episodes of deompensation are exacerabations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R., Part 404, Subpart P, App. 1 § 12.00(C)(4). The plaintiff complains, however, that no restriction indicating extended absence from work, or any absenteeism for that matter, was included in the hypothetical question to the vocational expert.

The Court admits some ignorance. First, as far as the Court can determine, decompensation is not synonymous with absenteeism. Certainly, decompensation by definition implies symptomology that might amount to absenteeism, *see id.*, but the plaintiff has not explained how it leads to that conclusion inexoribly or, otherwise, as a matter of law. But, that might be the Court's confusion. Second, while the ALJ found episodes of decompensation, the RFC, itself, does not include any limitation of absenteeism. (R. at 28-29.) So in this particular respect, there was no discrepency between the RFC and they hypothetical posed to the VE.

The defendant admits some inconsistency between the two RFCs regarding the stand/walk limitation included. But, as the defendant argues, in this respect, the residual functional capacity included in the hypothetical to the VE *was more limiting* than the residual

functional capacity in the ALJ's decision. (Compare R. at 28 ("able to stand and/or walk for a total of 6 hours in an 8-hour day") with R. at 83 ("stand and/or walk for a total of only two hours in eight-hour workday").) Notwithstanding the greater limitation included in the hypothetical, the VE still found jobs, which the plaintiff could perform.

But, again, remand for Dr. Montgomery's opinion may very well lead to a reassessment of whether evidence of disabling absenteeism is present or should otherwise be included in any RFC to a vocational expert. As stated, the Court may have misapprehended it. The respective hypotheticals, however, do not, on their face, portend of inconsistency worthy of remand.

The decision of the ALJ is not insignificant and generally well-reasoned. It is not a simple one to return. Consideration of Dr. Montgomery's opinion, however, seems sufficiently unexplained, in light of its relevance, that additional review is justified.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore ,RECOMMENDED, for the foregoing reason, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                    s/BRUCE H. HENDRICKS
                                                    UNITED STATES MAGISTRATE JUDGE

January 24, 2012
Greenville, South Carolina