IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANTHONY ODOM, ) | |
| ) | No. 2:10-02757-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Bruce H. Hendricks' Report and Recommendation (R&R) that this court reverse and remand the decision of the Commissioner denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI). Defendant has filed an objection. For the reasons set forth below, the court adopts the magistrate judge's R&R and remands the case for further administrative proceedings.

**I. BACKGROUND**

Plaintiff Anthony Odom filed for DIB and SSI on December 15, 2006, alleging that he became disabled on July 15, 2003, as a result of injuries sustained in a car accident, as well as other preexisting medical conditions. Tr. 21. Odom's claims were denied initially on June 19, 2007, and upon reconsideration on May 22, 2008. The ALJ held a hearing on September 9, 2009, id., and on October 5, 2009, issued a decision denying Odom's application for benefits. Tr 35. Following Odom's appeal, on January 24, 2012, the magistrate judge submitted an R&R recommending that this court reverse the ALJ's decision.

1

Odom was born on October 26, 1967, and was thirty-nine years old at the time he filed for DIB and SSI. Tr. 41. He has a high school education and past relevant work experience in construction, as a grocery store clerk and produce worker, as a meat cutter, and as a carpenter and mover for a moving company. Tr. 220. On July 15, 2003, Odom was in a motor vehicle accident that resulted in serious injuries. Tr. 440.

On September 17, 2003, Odom was diagnosed with a right hip dislocation resulting in pain, weakness, and an abnormal gait. Tr. 414. Odom attended two physical therapy sessions on September 22 and 24, 2003, failed to keep his appointment on October 8, 2003, and did not return for further physical therapy. Tr. 413. On October 16, 2003, Dr. Padgett treated Odom for pain and diagnosed Odom with chronic pain syndrome. Tr. 418-19. Dr. Padgett also suggested that prescription narcotics be suspended and recommended that Odom attend a pain clinic, which Odom refused. Tr. 419. From late 2003 through early 2007, various medical personnel treated Odom for a variety of physical and mental problems, including: hepatitis C, Tr. 424; alcohol abuse, Tr. 427; chronic back pain, Tr. 435-38; abdominal pain, Tr. 429-31, 439; lower back and head pain, Tr. 466; and possible chronic osteomyelitis, Tr. 409.

Odom began seeing Dr. Montgomery on October 4, 2004, and continued to visit Dr. Montgomery over the next few years. During his first visit, Odom complained of severe pain in his left hip and neck as a result of the July 2003 car accident. Tr. 367-68. Dr. Montgomery prescribed pain medication, but Odom later reported that the medication was not providing him relief. Tr. 366-67. Odom saw Dr. Montgomery on October 26, 2004 for left hip pain, and, following an adjustment to his pain medication, told Dr. Montgomery that the new medication was helpful. Tr. 364. From November to

December of 2004, Odom visited Dr. Montgomery several times, and Dr. Montgomery adjusted Odom's pain medications multiple times in that span. Tr. 356-62. Also during that time, Odom began receiving medication for bipolar disorder. Tr. 360-61.

On January 31, 2005, Odom told Dr. Montgomery that he tried to work a temporary job in Florida, but it caused him severe back and hip pain. Tr. 354. On May 27, 2005, Odom reported that he had difficulty climbing ladders and stairs, although his pain was mostly controlled with a combination of pain medications. Tr. 351. After a brief period of performing work that involved walking on concrete floors, Odom complained to Dr. Montgomery that his hip and back pain had worsened. Between February and June of 2006, Dr. Montgomery adjusted Odom's pain medications several more times. Tr. 343-49.

On December 7, 2006, Dr. Montgomery completed a Medical Source Statement (MSS), opining that Odom "ha[d] been capable of performing sustained SEDENTARY work on a regular and continuing basis," which was the equivalent of eight hours a day, five days a week. Tr. 375. Dr. Montgomery also noted that Odom "ha[d] not been capable of performing sustained LIGHT work on a regular and continuing basis." Tr. 376. Additionally, Dr. Montgomery indicated that Odom would be limited even if he had the option to alternate sitting and standing during the workday. Id. Dr. Montgomery reported that Odom would miss four or more days per month due to his medical conditions. Tr. 378. According to Dr. Montgomery, Odom would be limited in his ability to reach in all directions, twist his body, and lift or carry ten to twenty pounds. He reported that Odom would occasionally have difficulties in grasping or gripping, but could continuously engage in activities involving his fingers. Id. Dr. Montgomery stated

that Odom could sit for one hour and stand or walk for less than thirty minutes at a time without rest, which would equate to standing or walking two hours total in an eight-hour day. Tr. 379. Dr. Montgomery opined that Odom's constant and persistent pain in his leg and hip would inhibit him from doing most jobs for which he would qualify. Tr. 381.

On April 10, 2007, Dr. Charles Fitts, a Disability Determination Services (DDS) physician, completed a residual functional capacity (RFC) assessment, where he reported that Odom could occasionally lift fifty pounds, frequently lift twenty-five pounds, and could stand and/or walk roughly six hours in a normal work day. Tr. 250. Additionally, Dr. Fitts opined that Odom had neither postural limitations nor manipulative limitations, and acknowledged that he did not have any "treating or examining source statement(s) regarding [Odom's] physical capacities" in his file. Tr. 251-52, 255.

On April 1, 2008, Odom saw Dr. Killen for left leg and right shoulder pain, complaining that his pain was constant, throbbing, and burning. Tr. 476. Dr. Killen found Odom's motor strength to be 4+/5 (almost full) in both the upper and lower extremities. Tr. 477. Dr. Killen also reported that Odom's gait was "extremely antalgic" and that he "show[ed] difficulties coming to stand from a chair in the exam room with arms." Id.

On April 25, 2008, Odom saw Dr. Ain for chronic pain in his left hip. Dr. Ain reported that Odom's right leg range of motion was intact, while the left leg range of motion was limited, particularly in the flexion of the hip. Dr. Ain noted Odom's limp and his difficulty with rising from a squatting position. While the left hip joint appeared normal, there were a few bony spurs over the thoracic spine. Dr. Ain reported Odom's right leg strength as 5/5 and his left leg strength as 4/5. Tr. 482.

On May 20, 2008, another DDS physician, Dr. Christianson, completed an RFC assessment form, reporting limitations similar to the previous RFC assessment. Tr. 294. The only significant difference in Dr. Christianson's report was Odom's postural limitations of climbing ladders, ropes, and scaffolds, and crouching. Tr. 295. Dr. Christianson, like Dr. Fitts, had no treating source statements regarding Odom's physical capacities on file. Tr. 299.

At the hearing before the ALJ on September 9, 2009, Odom alleged he suffered from, among other things, constant hip pain, that this hip pain was his most severe physical impairment, that the pain was exacerbated by walking up steps and standing, and that he quit his prior jobs because he could no longer physically perform them. Tr. 46-48, 50-53. Odom testified that he could lift fifteen pounds without aggravating his pain, and walk forty feet without stopping. Tr. 71. A vocational expert (VE) testified that with Odom's age, education, and work experience, he could perform only sedentary work and would be capable of working in the jewelry manufacturing industry as a bonder or laminator. Tr. 82-83.

Applying the five-step sequential analysis, the ALJ first noted that Odom had not engaged in substantial gainful activity since July 15, 2003. Second, the ALJ found that Odom suffered from a combination of severe impairments, including: degenerative changes in his thoracic spine; degenerative changes and rod placement in his left hip; mood disorders; intermittent explosive disorder; personality disorder with antisocial and paranoid features; and polysubstance dependence.[1] The ALJ found that Odom's insomnia and hepatitis C were not severe. Third, the ALJ found that Odom's

---

[1] In addition to his physical problems, Odom was treated for a variety of mental health problems for many years; however, defendant's objection to the magistrate judge's R&R does not concern these mental impairments, so this court will not address them.

combination of impairments did not meet the requirements of 20 C.F.R. part 404, subpart P, appendix 1.  Fourth, the ALJ found that Odom had the RFC to perform less than the full range of sedentary work.  Odom was limited to lifting and/or carrying ten pounds occasionally and less than ten pounds frequently.  The ALJ noted that Odom was limited to standing and/or walking for a total of six hours in an eight-hour workday.  Odom was limited to occasionally engaging in push and/or pull actions with the left lower extremity, but never climbing ladders, ropes, or scaffolds.  In making this determination, the ALJ relied on Dr. Killen's observations of Odom's abnormal gait.  The ALJ gave Dr. Montgomery's opinion less than controlling weight because of what the ALJ determined was an internal inconsistency.  Odom's physical limitations precluded him from performing any past relevant work.  At the fifth step, the ALJ concluded that given Odom's RFC, Odom could perform jobs that existed in significant numbers in the national economy, and found Odom not disabled.  Tr. 25-35.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected.  See id.  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further consideration.  28 U.S.C. § 636(b)(1).  A

party's general or conclusory objections are not sufficient to challenge a magistrate judge's findings. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

Although this court reviews the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as,

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

### III.  DISCUSSION

Defendant objects to the magistrate judge's R&R, arguing that the ALJ properly discredited Dr. Montgomery's opinion because it was "internally inconsistent." Tr. 32. The magistrate judge found that the ALJ failed to articulate the inconsistency, and, moreover, failed to explain why the inconsistency mattered such that Dr. Montgomery's

7

whole opinion should be rejected. Additionally, the magistrate judge found that the ALJ likely had a duty to investigate and clarify the perceived internal inconsistency contained in Dr. Montgomery's opinion. Magistrate R&R 7-8.

Dr. Montgomery was Odom's primary treating physician from 2004-2006. The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is . . . inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

When an ALJ assigns less than controlling weight to a treating physician's opinion, he or she must "rationally articulate the grounds for [his or her] decision." Steel v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002); see also 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to . . . opinions from treating sources . . . ."). The ALJ must consider the factors enumerated in 20 C.F.R. § 404.1527(d):

> A treating physician's opinion, even when contradicted by other evidence, is entitled to deference and must be weighed based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors which tend to support or contradict the opinion.

Zarkowski v. Barnhart, 417 F. Supp. 2d 758, 765 (D.S.C. 2006) (citing 20 C.F.R. § 416.927(d)); see also id. ("[E]ven where the treating physician's opinion is not entitled to

'controlling weight' because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected."). The ALJ is not required to expressly discuss each factor; however, "the ALJ must at least indicate that he or she was aware of and considered all of the factors." Baxter v. Astrue, No. 10-3048, 2012 WL 32567, at *6-7 (D. Md. Jan. 4, 2012). The ALJ's failure to explain the weight given to a plaintiff's treating physician is grounds for remand because the reviewing court cannot determine whether substantial evidence supports the ALJ's decision. Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (stating that remand may be warranted when ALJ has not given "good reason for the weight afforded to a particular opinion," or relied on "'specious inconsistencies'"); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (reversing and remanding due to ALJ's failure to explain why he disregarded treating physicians' opinions).

Here, it is unclear whether the ALJ applied the factors set forth at 20 C.F.R. § 404.1527(d). The ALJ stated:

> A treating physician, Dr. Stefan Montgomery, M.D. completed a Medical Source Statement dated December 7, 2006 . . . . [I have] considered [Dr. Montgomery's] opinion evidence when assessing the claimant's [RFC], but the opinion cannot be given controlling weight because the statement is internally consistent. [Dr. Montgomery] indicated that the claimant would be absent from work 4 days or more per month due to his impairments, which is inconsistent with the opinion that the claimant is capable of sustained sedentary work activities.

Tr. 32 (citations omitted). While the ALJ did properly consider the consistency of Dr. Montgomery's opinion, see 20 C.F.R. § 404.1527(d)(4), the court is unable to determine whether the ALJ properly weighed Dr. Montgomery's opinion according to the remaining § 404.1527(d) factors. The ALJ cited the "internal inconsistency" as the sole basis for

9

declining to give Dr. Montgomery's opinion controlling weight, but failed to sufficiently explain his reasoning such that this court could find his decision to be supported by substantial evidence.

Consideration of the remaining § 404.1527(d) factors may have changed the ALJ's evaluation of Dr. Montgomery's MSS. As to the length and frequency of treatment, Dr. Montgomery treated Odom from 2004 to 2006, and had regular appointments roughly every month. Tr. 343-75. In regards to the nature and extent of the treatment relationship, Odom began treatment with Dr. Montgomery for severe pain in his left hip, and continued seeing him for nearly three years specifically because of his hip pain. Tr. 343-68. From the ALJ's decision, it is difficult to determine what medical evidence supported or contradicted Dr. Montgomery's opinion. While two state medical consultants, neither of whom were treating physicians, also conducted RFC assessments and reported that Odom had no significant functional limitations, Tr. 249-56, 293-300, these assessments were conducted without reliance on any treating physicians' opinions regarding Odom's physical capabilities. Tr. 255, 299. The ALJ apparently relied on Dr. Killen's opinion (although the ALJ assigned no particular weight to it), yet the ALJ "[did] not find any documented work or activated related restrictions" in Dr. Killen's record. Tr. 32. The remainder of the record does not directly address Odom's physical or exertional limitations, and without any explanation from the ALJ, it is difficult for this court to determine any level of consistency or inconsistency. It is not this court's duty to weigh the evidence or resolve inconsistencies in the record; as it stands, the court cannot conclude that the ALJ gave deference to Dr. Montgomery's opinion and weighed it

"using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96-p, 1996 WL 374188, at *4 (July 2, 1996); Hays, 907 F.2d at 1456.

Defendant contends that the ALJ reasonably found Dr. Montgomery's MSS to be internally inconsistent. What defendant fails to recognize is that the ALJ's decision does not account for the remaining § 404.1527(d) factors, instead arguing that the ALJ was entitled to dismiss Dr. Montgomery's entire opinion on the basis of an internal inconsistency. A treating physician's opinion may be afforded less weight when it is "not supported by clinical evidence" or "inconsistent with other substantial evidence." Craig, 76 F.3d at 590 (emphasis added); Robertson v. Barnhart, No. 05-00513, 2006 WL 1288563, at *4-5 (W.D. Va. May 3, 2006). As noted above, it is not this court's job to weigh the clinical evidence. Hays, 907 F.2d at 1456. Nor is this court required to entertain defendant's post-hoc contention that Dr. Montgomery's opinion was also inconsistent with the other evidence in the record. See Golembiewski v. Barnhart, 322 F.3d 912, 915-16 (7th Cir. 2003) (refusing to consider arguments made by the Commissioner when those grounds were not given by the ALJ); Steel, 290 F.3d at 941 ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). As stated by the magistrate judge, "At worst, the [ALJ's] opinion may require some clarification." Magistrate R&R 7.

Because it is unclear whether the ALJ appropriately considered the 20 C.F.R. § 404.1527(d) factors and failed to sufficiently explain what warranted dismissal of Dr.

Montgomery's MSS, the court is unable to find that the ALJ's decision is supported by substantial evidence. As such, remand is appropriate.[2]

### IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, **REVERSES** the Commissioner's decision, and **REMANDS** under sentence four of 42 U.S.C. § 405(g) for further proceedings.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 27, 2012
Charleston, South Carolina**

---

[2] The magistrate judge also found that the ALJ had some duty to investigate the internal inconsistency in Dr. Montgomery's MSS. The duty to investigate inconsistencies arises only in limited circumstances. See, e.g., Jackson v. Barnhart, 368 F. Supp. 2d 504, 508-09 (D.S.C. 2005) (finding no duty to recontact when the physician's opinion was "wholly inconsistent" with the remainder of the record, including the physician's prior records, because the record "provided a sufficient basis for [a] determination that [the claimant] was not disabled"); White v. Massanari, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician."). The District of South Carolina has previously held that failing to recontact a treating physician after the physician submitted an internally inconsistent opinion was not reversible error. In Tadlock v. Astrue, No. 06-3610, 2008 WL 628591, at *8 (D.S.C. Mar. 4, 2008), the court relied upon other examining physicians' opinions concerning plaintiff's physical capabilities, and considered the "voluminous record" that obviated the need to recontact. Here, however, there are no other treating physicians' opinions concerning Odom's physical capabilities and limitations. While courts generally do not impose the duty to recontact with much rigor, this court agrees with the magistrate judge that here, where the internal inconsistency was dispositive of the ALJ's entire dismissal of Dr. Montgomery's opinion, the ALJ had a "duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." Miller v. Callahan, 964 F. Supp. 939, 954 (D. Md. 1997).